IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

    vs.                                Case Number: **4:13cr34-RH**

**DEREK TYRONE JONES**
**a/k/a "Ice"**
**a/k/a "Debo"**
_____/

## STATEMENT OF FACTS

In August 2011, law enforcement officers identified Derrick Howell as a multi-kilogram cocaine source of supply (SOS) for numerous drug traffickers in the area of North Florida and South Central Georgia. Officers determined that Howell's nephew, Deltrioz Grimsley, distributed cocaine and collected drug proceeds from various drug traffickers supplied by Howell, to include Derek Tyrone Jones.

On February 13, 2013, officers executed multiple search warrants in Tallahassee, Florida, resulting in the seizure of approximately six and a half kilograms of cocaine, approximately $25,000, and multiple firearms. Immediately preceding the service of the search warrants, a Cooperating Source (CS-1) sent a series of text messages to Howell indicating that CS-1 had $30,0000, which CS-1 owed for cocaine previously "fronted" by Howell and delivered by Grimsley. Within minutes of sending the text messages to Howell, CS-1 received several text messages from Grimsley, directing CS-1 to a Tallahassee Walmart to collect the drug debt.

FILED IN OPEN COURT ON

_November 26, 2013_

United States District Court
Northern District of Florida

Upon arrival in the Walmart parking lot, Grimsley was arrested on a criminal complaint. Following his initial appearance, Grimsley began to cooperate with law enforcement officers. During his debriefing Grimsley identified various drug traffickers supplied by Howell, to include Derek Jones. Officers were familiar with Jones, as numerous other confidential sources had previously identified Jones as a cocaine distributor. Officers had determined that Jones operated a mechanic shop located on Capital Circle in Tallahassee, Florida. In addition, officers had observed Grimsley frequent Jones' shop on several occasions during periods of surveillance.

Grimsley consented to a search of his cell phone. Officers observed numerous text messages between Grimsley, Howell and Jones which corroborated the historical cocaine transactions. For instance, one text from Howell to Grimsley read, "look in room in dresser at the bottom drawer, take ONE of those things.....take a 250 for you, Do 10 pillows for ice." Grimsley identified Jones' telephone number and advised that the number was stored in his cell phone contact's list as "Ice." Grimsley explained that Howell had supplied Jones with half kilogram quantities of cocaine roughly every two weeks for the past year and a half, absent a four month period in which Howell could not locate cocaine for sale. A conservative estimate of 500 grams, once a month over this time period resulted in Jones' distribution of approximately 7.0 kilograms of cocaine.

Grimsley advised that he routinely met Jones at the Taco Bell located in the Walmart parking lot on Apalachee Parkway to transfer possession of the cocaine and collect the proceeds of previously "fronted" cocaine. Officers corroborated Grimsley's statements with text messages which read, "take 6 out of each pillow and give it to him, he got 5 bands for u....pickup from ice, bike, n tay if he got a check." Grimsley stated that he last delivered cocaine to Jones just days before his arrest, and was due to collect drug proceeds for previously "fronted" cocaine.

Under the direction and supervision of officers, Grimsley sent several monitored text messages to Jones. Jones responded to the text messages stating, "On parkway about to head to work." Grimsley texted, "you ready," explaining to officers that this was the terminology he used to see if Jones was ready for more cocaine and had the money for the previously "fronted" cocaine. Jones responded affirmatively and Grimsley then placed a recorded call to Jones. During the recorded call, Jones acknowledged the prior drug debt and discussed meeting Grimsley at Taco Bell after leaving work for the day.

Later than evening, officers awaited Jones' arrival at the Taco Bell parking lot. After some time, officers sent additional text messages to Jones from Grimsley's seized cellphone. Jones responded, "Damn cuz, I didn't realize what time it was. Bout to leave work." Officers continued to wait, but Jones did not arrive. Jones again responded to the officers' text messages indicating that he was one his way, but officers feared that Jones had learned of Grimsley's arrest two days before.

Ultimately, officers decided to conduct a "knock and talk" at Jones' residence. After identifying themselves, Jones was made aware he was not under arrest. The officers explained that they wished to offer Jones an opportunity to cooperate with law enforcement. Jones was made aware of the recorded communication between he and Grimsley and he began to shake his head. Jones expressed disbelief that he had been caught, and asked for some time to consider whether he would cooperate with law enforcement. Jones was provided with a business card and encouraged to consult with an attorney. The officers advised Jones that charges related to his drug trafficking would be forthcoming.

Following Jones' indictment on March 6, 2013, officers attempted to locate Jones. For several weeks officers were unsuccessful in doing so. On March 22, 2013, surveillance officers observed Jones departing his residence in his Chevrolet Tahoe. Officers attempted to conduct a traffic stop of Jones' vehicle, however Jones fled from the officers. Jones speed down the streets of a residential neighborhood, which were then occupied by elderly people and small children. The officers did not pursue Jones, but returned to Jones' residence. Upon their arrival, officers observed Jones attempting to enter a white sedan parked in his driveway. Jones initially resisted the officers, but was ultimately arrested in the driveway. Officers later learned that Jones' daughter had been inside of the Chevrolet Tahoe during his flight from the officers.

## ELEMENTS

Conspiracy To Distribute A Controlled Substance - 21 U.S.C. 846

     (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess and distribute cocaine;
     (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it; and
     (3) the object of the unlawful plan was to possess with the intent to distribute more than five kilograms of cocaine.

PAMELA C. MARSH
United States Attorney


Timothy R. Jansen
Attorney for Defendant

11/26/13
Date

Derek Tyrone Jones
Defendant

Jason R. Coody
Assistant United States Attorney
Kansas Bar No. 20805
Northern District of Florida
111 N. Adams Street, Fourth Floor
Tallahassee, FL 32301
(850) 942-8430

4