**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

*UNITED STATES OF AMERICA,* )
)
     *Plaintiff,* ) *Case No: 4:13-cr-34/RH*
)
*vs.* ) *Tallahassee, Florida*
) *February 13, 2014*
*DEREK TYRONE JONES,* ) *9 A.M.*
 *a/k/a "Ice,"* )
 *a/k/a "Debo,"* )
)
     *Defendant.* )
_____ )

**TRANSCRIPT OF SENTENCING PROCEEDINGS**
**BEFORE THE HONORABLE ROBERT L. HINKLE,**
**UNITED STATES DISTRICT JUDGE**

<u>APPEARANCES:</u>

| | |
|---|---|
| For the Plaintiff: | Pamela C. Marsh |
| | United States Attorney |
| | By:  JASON R. COODY |
| |  Assistant U.S. Attorney |
| | *jason.coody@usdoj.gov* |
| | 111 North Adams Street |
| | Tallahassee, Florida  32301 |
| | |
| For the Defendant: | Jansen & Davis, P.A. |
| | By:  R. TIMOTHY JANSEN |
| |  Attorney at Law |
| | *jansen@jansenlawoffice.com* |
| | 1206 North Duval Street |
| | Tallahassee, Florida  32303 |



                    P R O C E E D I N G S

 1      (Call to Order of the Court.)

 2      (Defendant present.)

 3          THE COURT:  Good morning.  Please be seated.

 4          This is United States versus Derek Tyrone Jones.

 5  We're here for sentencing.  Is the government ready?

 6          MR. COODY:  Yes, Your Honor.

 7          THE COURT:  Defense ready?

 8          MR. JANSEN:  Yes, Your Honor.

 9          THE COURT:  Mr. Jones, the procedure we're going to

10  follow is this:

11          I'm going to first talk with the lawyers about the

12  governing statutes and the United States Sentencing Guidelines

13  to make sure that those things have been properly addressed.

14  Then you will be able to say anything you'd like to say.

15  You're not required to say anything, but you're welcome to say

16  anything you would like.  And Mr. Jansen will be able to make

17  any presentation on your behalf.

18          Before we start, I need to ask you this:

19          Have you read the presentence report and addendum and

20  discussed those with Mr. Jansen?

21          THE DEFENDANT:  Yes.

22          THE COURT:  The presentence report calculates a Total

23  Offense Level of 29 and Criminal History Category of II, but

24  the report also concludes that the mandatory sentence under

the governing statutes is life in prison.

There have been no objections to those conclusions. Are there any?

MR. COODY:  None by the government.

MR. JANSEN:  No, Your Honor.

THE COURT:  So that's the mandatory sentence in the case.  I do need to address that.

Mr. Jones, as you know from reading the presentence report, and I'm sure from talking with Mr. Jansen, also from our discussion at the time of the guilty plea, the sentencing structure is affected by prior drug felony convictions.  The reason that the mandatory sentence in this case is life in prison is because of at least two prior drug felony convictions.  The government has filed a notice saying that there were three prior drug felony convictions that qualify. What I need to tell you about those convictions is this:

If you claim that for any reason those convictions were not valid, or that there is any reason why I cannot properly consider those convictions today in determining the sentence in this new federal case, you need to tell me about that right now.

Any basis for challenging the validity of those sentences that you don't tell me about at this time will not be something you can assert later as a basis for challenging this sentence.  So the deadline for telling me of any problem

1   with those prior convictions is now.  And I need to ask you

2   about those prior convictions.

3         The first is described in paragraph 37 of the

4   presentence report.  The assertion is that you were convicted

5   back in 1996 after an arrest in 1995, and one of the charges

6   at that time was possessing cocaine with intent to sell.  The

7   charge is that there was such a conviction in state court here

8   in Tallahassee, the Leon County courthouse down the street.

9         Were you convicted in 1996 of possessing cocaine with

10  intent to sell?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Do you have any basis to contend that

13  that conviction is not valid or can't be used here today?

14        THE DEFENDANT:  No.

15        THE COURT:  Then, in paragraph 44, the presentence

16  report says that you were convicted in 1999 -- again, in state

17  court here in Tallahassee -- on the charge of delivering

18  cocaine to a minor.  Were you convicted on that charge at that

19  time?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  Do you have any basis to contend that

22  that conviction was not valid or can't be used today?

23        MR. JANSEN:  Judge, I would like to correct -- the

24  notice of the enhancement said the conviction was 1998.  The

25  actual conviction was in 1999.  It's the same case number,

1  Judge, but the year -- I don't know if it's a typographical

2  error in the notice of enhancement, but the case number, he

3  was convicted of that offense.  They just put the wrong year

4  in the notice of the enhancement.

5          THE COURT:  All right.

6          MR. JANSEN:  Which I don't believe would affect

7  the --

8          THE COURT:  I don't think that makes a difference,

9  but you've noted it.  To the extent it makes a difference,

10  anybody asserts that it makes a difference, then you've

11  preserved that position.  It does have the case number, and

12  it's tied in.  I didn't notice the difference in dates.

13  Frankly, I look them up in the presentence report by case

14  number, and I found the case number.  And it's obvious from

15  the case number that it's a 1999 case.  That's why the case

16  number is 99-CF-398.

17          MR. JANSEN:  Judge, that would be the same for

18  paragraph 43.  It has the wrong year, 1999 rather than 1998.

19          THE COURT:  And I didn't have paragraph 43 in the

20  notice of enhancement.  I'll be honest with you, I didn't go

21  back and read the notice of enhancement.  I read the

22  description of it in the presentence report.  But according to

23  the description in the presentence report, the government did

24  not list the cocaine possession offense in paragraph 43 as a

25  predicate offense.

1   MR. COODY:  Your Honor, I believe we did --

2   MR. JANSEN:  They did, Your Honor.

3   MR. COODY:  I was not going to interrupt the court,

4   but the court skipped over it.  It is reflected in the

5   government's notice.  Mr. Jansen is correct, and it was

6   probably a typographical error, and it was my typographical

7   error, with regard to the year of conviction.  The case

8   numbers, as the court indicated, do reflect the correct court

9   case numbers.

10   I was already prepared, without objection, I don't

11   believe, to introduce Government's Composite Exhibit Number 1,

12   which are certified copies of the four predicated convictions.

13   I believe there's actually four prior drug felonies rather

14   than three.

15   THE COURT:  There are.  Maybe I read the presentence

16   report wrong.  I thought the presentence report just listed

17   the three.  I just may have read it wrong.

18   In paragraph 5 there are three listed; but, if the

19   actual notice has four, then what matters is the actual

20   notice, not what the presentence report said about it.

21   MR. COODY:  Your Honor, may I approach?

22   THE COURT:  You may.  Government 1 is admitted into

23   evidence.

24   (GOVERNMENT EXHIBIT NO. 1:  Received in evidence.)

25   THE COURT:  The notice of enhancement is ECF Number

17, and it does include the cocaine possession charge that's

in paragraph 43 of the presentence report.

We were at the point I had asked about the delivery

of the cocaine to a minor in paragraph 44, and I think I have

the answer that there is no basis to challenge the validity of

that conviction or its use, other than the possible objection

that the date of the conviction was listed wrong in the notice

of enhancement; is that right?

MR. JANSEN:  That would be correct, Your Honor.

THE COURT:  All right.  And, Mr. Jones, that's

correct, you were convicted and have no basis to challenge

that conviction?

THE DEFENDANT:  Yes.

THE COURT:  Then in paragraph 43, the presentence

report says you were convicted of possessing crack cocaine --

simple possession, as it is sometimes called -- in 1999,

again, in state court here in Tallahassee.  Were you convicted

of that offense at that time?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you have any basis to contend that

that conviction was not valid or cannot properly be used here

today?

THE DEFENDANT:  No.

THE COURT:  Then in paragraph 46 --

MR. JANSEN:  Judge, I'm sorry to interrupt.  On 43,

1 again, for the record, the date on the enhancement was

2 incorrect.

3          THE COURT:  All right.  The notice of enhancement has

4 the right date within the year, but the wrong year.  It says

5 July 20, 1998; and actually the conviction, according to the

6 presentence report, was July 20, 1999.  Again, that would be

7 obvious from the case number, because it's a 99 case number.

8          Then in paragraph 46, the presentence report says

9 that Mr. Jones was convicted in 2004, after an arrest in 2003,

10 on the charge of possessing cocaine with intent to sell or

11 deliver, again, in state court here in Tallahassee.

12          Mr. Jones, were you convicted of that offense at that

13 time?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Do you have any basis to contend that

16 that conviction is not valid or can't be used here today?

17          THE DEFENDANT:  No.

18          THE COURT:  All right.  Then I'll hear any defense

19 presentation.

20          Mr. Jansen?

21          MR. JANSEN:  Your Honor, as the court knows, the

22 guidelines would apply, if the statutory minimum mandatory

23 maximum life sentence did not apply.  In this case, Your

24 Honor, we entered a plea with the understanding that there

25 possibly would be a 5K1 cooperation motion, which would have,

```
 1   if granted by the court, terminated the mandatory life and put
 2   him into a guideline range, which would have put him in a
 3   97-to-121 range.
 4          We were working toward that path, and we had the
 5   sentence continued I think one time during that process.  And
 6   the government can tell you, quite candidly, not long ago, I
 7   would say less than two weeks ago, an event occurred which
 8   came into question and questioned whether the government would
 9   file a 5K.
10          As soon as I became aware of this, I met with
11   Mr. Coody.  Actually, I met with my client first to go over
12   what new information, if I could give anything to undermine or
13   somewhat contradict the new evidence that was coming out.  At
14   that point we didn't have anything to give.
15          I met with Mr. Coody a couple of days ago.  Yesterday
16   he gave me a copy of a DEA-6 of a person who was recently
17   arrested.  That DEA-6 interview of that person gave
18   information, which materially, significantly contradicts some
19   of my client's statements.  The government is looking into
20   that.  I assured --
21          I told my client that there would be no basis for me
22   to file a continuance motion at this time, of the sentencing.
23   The government is going to keep looking into the matter and
24   determine whether or not that information is valid and
25   truthful.
```

1    I explained to my client, the court has no option

2  today without that 5K1 but to sentence him to a life sentence.

3    That's where we are, Judge.  We had some minor

4  changes, but they didn't significantly affect the presentence

5  report.  That's where we are now.

6    THE COURT:  All right.  Thank you.

7    Mr. Jones, you're welcome to say anything you would

8  like.  You're not required to say anything.  It's up to you.

9  Would you like to make a statement?

10    Come to the microphone.  I'll hear you better.

11    THE DEFENDANT:  The only thing I'd state about the

12  5K1, the reasons for it are kind of, like, outlandish, the

13  lies that are on there.  The statements that my mother was

14  involved with drug transactions and -- just the whole thing is

15  a bunch of lies.  I haven't dealt with the guy that's on there

16  since 2000, '99.  And I did think about it later that I didn't

17  say anything, but I didn't think it would make a difference,

18  because I hadn't dealt with him, like, within the time

19  constraints of the conspiracy I'm charged with.  But that's

20  about it.

21    THE COURT:  All right.  Thank you.

22    Let me say one thing on that subject.  As you know,

23  I'm sure, from talking with Mr. Jansen, and as we've discussed

24  so far, the sentence that I'm going to impose today is going

25  to be life in prison, because that's the mandatory sentence.

The law provides that the life sentence can be reduced if the government later files a motion saying you have provided substantial assistance in the investigation or prosecution of others.  It's up to the government -- the prosecution -- whether to file such a motion.

If they do file a motion, then it's up to me to decide whether to reduce your sentence and, if so, how much to reduce it.  In doing that, what's important to me is complete candor.  Tell the truth and the whole truth, and let the chips fall where they may.

So I, of course, don't know, other than just the little bit you've told me about, what this issue is now.  The government obviously is concerned that you haven't told the whole truth to the government, and Mr. Jansen suggested that's being worked through.  So it will be worked through.  Here's what you should not do:

Don't exaggerate your information or say things that aren't true, thinking that that's the way to get a substantial assistance motion or sentence reduction.  Just tell the truth.

That puts you a little bit at the mercy of the government.  You have to count on the government to work it through and figure out what the real truth is.  But, of course, they are on the other side of the case.  But you count on them, I count on them to do that conscientiously.  So, if you're really telling the whole truth, you can count on the

1   government to figure that out.  Don't go changing stories or

2   exaggerating to think that you would do better with the

3   government or with me.  Just tell the truth.

4           Anything else from the defense?

5           MR. JANSEN:  Judge, all I can -- I understand the

6   government's position that, if the allegations or the

7   testimony, information, the government received is accurate, I

8   think the government's position is well taken.  And I think

9   the government can speak for themselves how they want to

10  respond.

11          THE COURT:  All right.

12          Mr. Coody?

13          MR. COODY:  Your Honor, given the great likelihood of

14  further review on appeal, I think I need to supplement the

15  record just a little bit.  And I also want the court to

16  understand the rationale for the absence of the motion.  I

17  think it's important in both respects.

18          If you'll indulge me, let me just provide the court

19  just a brief chronology so you can understand the context of

20  where we find yourselves.

21          As the court knows from reviewing the presentence

22  report, the defendant, prior to even being indicted, was

23  contacted quietly, if you will, by law enforcement after he

24  was intercepted communicating with the co-conspirator,

25  Mr. Grimsley.  He was given the opportunity -- it's reflected

1    I believe in paragraph 14 of the presentence report -- an

2    opportunity to obtain counsel, to discuss the matter, and

3    determine whether he would cooperate with law enforcement.

4        He made a decision that he was not going to do that

5    at that time.  Did not have counsel contact law enforcement.

6    And after being indicted, as is reflected in paragraph 15 of

7    the presentence report, on March 6th, law enforcement

8    attempted to locate him to effect the arrest and begin the

9    prosecution.

10       On March 22nd, the law enforcement attempted to

11   conduct a traffic stop, after seeing the defendant leave his

12   residence.  He fled from law enforcement, ultimately, through

13   a crowded neighborhood.  Law enforcement discontinued to

14   pursue, went back to the residence and found him at the

15   residence at that time, and he was arrested.

16       THE COURT:  I understand all of that.  None of that

17   is a reason not to grant a 5K, because the plea and

18   cooperation agreement was after all of that.  When you entered

19   the agreement with him you knew all of that.

20       MR. COODY:  I understand.  I was just laying it out

21   so the record will be clear so that, when someone else is not

22   looking just at a PSR, they will have the full picture of what

23   we're talking about.  But you're correct, Your Honor, that's

24   true; that occurred prior to the plea and cooperation

25   agreement.

```
 1        After he pled guilty -- in fact, even before he pled
 2   guilty, Mr. Jansen, myself, and a couple of agents sat down
 3   with the defendant on two prior occasions.  And Mr. Jansen is
 4   correct.  They requested a continuance of the trial setting, I
 5   believe, three times.  The court granted it, given the gravity
 6   of this case, giving the defendant an opportunity to decide if
 7   he was going to cooperate; and, if so, then he would provide a
 8   truthful account to the government, such that he may earn a
 9   substantial assistance motion.
10        I can represent to the court that on two separate
11   meetings in the Wakulla County Jail, within a week or so of
12   each other, myself, the agents, and Mr. Jansen explained to
13   the defendant, "You have to provide all of the information you
14   have; you can't talk about some people, withhold information
15   about others; and given the penalty you're facing, if you
16   plead guilty, or if you're found guilty, this would be the
17   sentence that the court would be faced with imposing."
18        There was no question, Mr. Jansen, on behalf of his
19   client, conveyed that to him both publicly with us present and
20   certainly privately.
21        After that meeting -- that would have occurred just
22   within a few days of his plea -- on or about January 15th of
23   this year, following his plea of guilty, following him telling
24   the government on numerous occasions, "I told you everything
25   about who I dealt with," an individual by the name of Dexter
```

1  Weston was arrested in Wakulla County.

2  　　　At the time of Mr. Weston's arrest, he was found in a

3  vehicle which contained just short of 2 kilograms of cocaine

4  and $125,000 in currency.

5  　　　Mr. Weston, immediately upon his arrest, relayed to

6  law enforcement that the money in the vehicle and the cocaine

7  belonged to the defendant, Mr. Jones.  More significantly,

8  what Mr. Weston said, in February or early in 2013, after

9  Mr. Jones had been contacted by law enforcement at his home,

10  before he been indicted, before he had been arrested, during

11  the period in which he was out, Mr. Weston explained that

12  Mr. Jones telephoned him and asked him to come to the

13  automotive shop that Mr. Jones operated.  He indicated that he

14  had been contacted at his home by police and thought the feds

15  had him, and explained that he wanted him to come to the shop

16  because he had something he wanted him to hold for him or hold

17  on to.

18  　　　Mr. Weston further explained that it had been their

19  practice that, when one of them would be in jail, if there was

20  money or drugs that the other one had, that they would hold on

21  to it for the other one during the period of confinement.

22  　　　Mr. Weston went on to say, specifically, and relayed

23  to law enforcement intimate details that only Mr. Jones could

24  have provided to him about how law enforcement came to his

25  home, what was discussed, those type of facts that only he

would know. And, ultimately, Mr. Weston said Mr. Jones's

voice was cracking on the phone; he was very upset; and that

he did go to his shop a day or two -- I think the following

Monday -- and was given a bag or a bag was placed in the back

of a vehicle that Mr. Weston had there for repairs.

Ultimately, he indicated that, when he looked in

there, it had 2 kilograms or just shy of 2 kilograms of

cocaine and the $125,000 I referenced.

Mr. Weston indicated that he held those drugs and

that money for the defendant, and that that's where it had

been, hidden in the vehicle, because he didn't have a

residence where he could stay with any certainty and was

fearful that it would be seized, and so he kept it in the

vehicle, which he was driving when he was arrested on or about

January 15.

So, I want the record to be clear, and I want the

court to understand the significance of this.

The government has no reason to doubt the statements

of Mr. Weston. And even this, even if you question when the

drugs were given or who the drugs belonged to, what I can

represent to this court with absolute certainty is Mr. Jones,

during three separate debriefings, never mentioned Dexter

Weston once, period. Not that I dealt with him in 2000 or

1999. Not that I ever dealt with him. He talked about other

people, but he never mentioned a gentleman who ended up being

found in possession of $125,000 and 2 kilos of cocaine that

claims that those drugs and that money belonged to the

defendant.

And so the government has great concern that the

defendant has not been candid, and certainly had provided

those drugs to someone, and that money to someone, in the

hopes that, if he convinced the government to get a motion and

the court gave him a lesser sentence, he would have something

to come home to.

So it's for that reason the government has not filed

a motion.  I think there's really no point in going further --

THE COURT:  The key to that, from your perspective,

is that Mr. Weston knew that the law enforcement officers had

been to talk to Mr. Jones, and how they got the information,

and that was information that could only have come from

Mr. Jones.

MR. COODY:  Correct.

THE COURT:  Got it.  Okay.

All right.  So where it is at this point is that

Mr. Jansen is in the case; you'll work through your

information.  If something changes -- you don't expect it to,

but -- if something changes, you can always file a Rule 35.

MR. COODY:  That's a fair statement.

THE COURT:  All right.  Mr. Jansen, that's where it

is from your perspective?

1    MR. JANSEN:  We have discussed that, and I have

2  discussed it with my client.  I have gone over it with him and

3  asked him to provide me anything I can to help to undermine

4  his testimony.

5    THE COURT:  All right.  Anything further from the

6  defense?

7    MR. JANSEN:  No, Your Honor.

8    THE COURT:  All right.  Then, as I said, the sentence

9  in the case will be life.  That's the mandatory sentence.  The

10  United States Congress has decided that someone who deals this

11  amount of drugs and has at least two prior drug felony

12  convictions of the kind that Mr. Jones has, has to be

13  sentenced to life, unless there is a substantial assistance

14  motion, which in this case there is not.  So that's the

15  mandatory sentence.

16    Mr. Jones, if you would, please, stand for the formal

17  imposition of the sentence.

18    I find that the presentence report is accurate with

19  the additional findings and comments I have made on the

20  record.

21    Based on the Sentencing Reform Act of 1984, as

22  amended, the court's judgment is that the defendant, Derek

23  Tyrone Jones, is committed to the Bureau of Prisons for life.

24    If Mr. Jones should be released, he will be on

25  supervised release for ten years as required by the statute.

Supervision will be under the court's standard conditions and these special conditions:

Mr. Jones must report to the probation office within 72 hours after release from custody.

Mr. Jones must not own or possess a firearm, dangerous weapon, or destructive device.

Mr. Jones must submit to testing to determine whether he's using drugs or alcohol.

Mr. Jones must successfully participate in substance abuse treatment consisting of an initial evaluation by a probation officer, or outside provider, and any further appropriate treatment. The treatment may include cognitive behavioral therapy.

Mr. Jones must provide the probation officer all requested financial information -- business or personal.

I'll include in the judgment a recommendation that, prior to any release, Mr. Jones participate in the residential drug abuse program; and that he be designated as near as possible to an appropriate location. Is that Tallahassee?

MR. JANSEN: Close to Tallahassee.

THE COURT: Mr. Jones, I'm going to recommend that you be as close as possible to Tallahassee. The Bureau of Prisons considers my recommendation, but they also consider a whole list of other factors in deciding where to put someone. So the fact that I recommended it doesn't mean it will happen,

1    but I will include that recommendation.

2            I find that Mr. Jones does not have the financial

3    ability to pay a fine.  None is imposed.  It is ordered that

4    Mr. Jones pay a special assessment of $100 as required by

5    statute.

6            Mr. Coody, is there any forfeiture that should be

7    included in the judgment?

8            MR. COODY:  The defendant may contest it, but the

9    government would ask that any interest he has in the $125,000

10   that was seized be forfeited.

11           MR. JANSEN:  No objection, Your Honor.  It is --

12           THE COURT:  Not his.

13           MR. JANSEN:  -- not his money.

14           THE COURT:  All right.  Mr. Jones is ordered as part

15   of the criminal judgment to forfeit any interest he has in the

16   $125,000 that was seized from Mr. Weston.

17           So the total sentence is life in prison, ten years of

18   supervised release, a $100 special assessment, and forfeiture

19   of any interest in the $125,000.

20           Are there any objections to the sentence as imposed?

21           MR. COODY:  None by the government.

22           MR. JANSEN:  No, Judge, other than the ones we raised

23   on the enhancement.

24           THE COURT:  All right.  I think that was two of the

25   four, and the other two would be enough by themselves.  But my

ruling on that is that the apparent typographical error in the

date did no harm, and it's properly corrected.

Mr. Jones, you have the right to appeal.  Any appeal

needs to be filed in the next 14 days.  If you are unable to

afford a lawyer for an appeal, one would be appointed for you.

Mr. Jansen can file a notice of appeal for you.  The

clerk of court also would file a notice at your request.  Just

make sure that, if you wish to appeal, a notice of appeal gets

filed in the next 14 days.

You should talk with Mr. Jansen as soon as you can --

right now, as we break, if you can -- to make sure he has a

clear understanding of whether you do or do not wish to appeal

in the case.

Then, Mr. Jansen, I have been asking defense lawyers

to do this, I've probably asked you to do this in other cases:

If Mr. Jones decides not to appeal, please write him

a letter to confirm the decision and to bring home to him the

importance, make sure there is no misunderstanding.

If he decides to appeal and you're going to handle

it, just, of course, file the notice and go forward.  If he

decides to appeal and you're not going to handle it, please at

least stay with him long enough to make sure that he gets a

notice of appeal timely filed.  If he's going to seek

appointment of a lawyer, he does that; or if he's going to try

to hire somebody, that he does that.  Don't let the ball get

1    dropped in the transition.  And then do what you can at the

2    trial level in terms of substantial assistance.

3              MR. JANSEN:  Right.

4              THE COURT:  Stay with him and see that that gets

5    handled properly.

6              What else, if anything, do we need to do in

7    Mr. Jones's case?

8              MR. JANSEN:  Judge, may we approach?

9              THE COURT:  You may.

10             MR. JANSEN:  It can be off the record.

11        *(Conference held at the bench.)*

12             THE COURT:  My practice is every word that is said in

13   a criminal case is on the record, even when the lawyer says, I

14   just need to use the restroom, I don't need to go on the

15   record; otherwise, somebody who reads the transcript, and

16   there is an off-the-record discussion, and they think -- the

17   defense thinks that's when --

18             MR. JANSEN:  I got you.

19             THE COURT:  Does Mr. Jones need to be here for this?

20             MR. JANSEN:  No.  My only concern with me not filing

21   a notice of appeal, I think his only alternative is going to

22   be a 2255, that I have erred.  But I am going to try to get

23   him a Rule 35, and I don't want to be the one filing a notice

24   of appeal, if there is no basis for it.

25             THE COURT:  Well, is there a reason why we can't have

 1  this discussion in open court?

 2       MR. JANSEN:  I guess we can, yes.

 3     (*End of bench conference*.)

 4       THE COURT:  Mr. Jansen started explaining, and my

 5  response was, is there a reason not to have this discussion in

 6  open court, because I want Mr. Jones to hear it.  So tell me

 7  again essentially what you said.

 8       MR. JANSEN:  Judge, I was wondering if the court

 9  could appoint someone to do the notice of appeal for my

10  client.

11       My position and my role at this point would be to try

12  to get him a Rule 35.  I do not have a basis to do an appeal.

13  I don't want to be put in a position where I filed a notice of

14  appeal in a case where there is no basis.  At the same time

15  I'm trying to get the government to consider a Rule 35.  It

16  puts me in kind of a tenuous position, and I don't want my

17  client to suffer from possibly getting that Rule 35 while at

18  the same time preserving an issue for appeal.

19       THE COURT:  He's going to qualify for appointed

20  attorney?

21       MR. JANSEN:  I think he will, Your Honor.

22       THE COURT:  From the financial information in the

23  presentence report, it certainly looks like he does.  Let me,

24  I guess, back up and address this a little bit.

25       Mr. Jones, whether you appeal or not is your

*1* decision.  I do my best in every case to preserve a

*2* defendant's ability to pursue an appeal, if the defendant

*3* wants to do that.  I think the decisions I make in a case are

*4* correct, but sometimes I think a decision I've made is correct

*5* and the court of appeals thinks otherwise, and that's why

*6* there is a court of appeals.  And so I do my best to see to it

*7* that, if a defendant, or any party, wishes to appeal in a

*8* case, the process is there and the party can do it.

*9* In my experience, it sometimes happens that the

*10* government is less willing to file a substantial assistance

*11* motion when a defendant pursues an appeal.  I don't know

*12* whether that's true or not.  I had a discussion yesterday in

*13* connection with a plea I took where the -- there was some

*14* suggestion that the government had told the defense that, if

*15* the defense appealed, then the government was not going to

*16* file a substantial assistance motion -- not going to take any

*17* cooperation from the defendant -- and we discussed that.  That

*18* wasn't at the point of an appeal.  It was a different

*19* situation than your situation.

*20* I don't know what the government will do in that

*21* situation, and I'm not giving you any advice about what to do

*22* going forward.  What I am saying is that what you need is a

*23* very good lawyer to help give advice on those subjects.  You

*24* have a very good lawyer who can advise you on those subjects.

*25* Part of what Mr. Jansen said is he doesn't want to be

1  the lawyer that goes forward on an appeal while he's working

2  for you toward trying to get a substantial assistance motion.

3          One way or the other, you're entitled to an appointed

4  lawyer on an appeal, if that's what you want to do.

5          Mr. Jansen, I take it, that you have been retained at

6  the trial level --

7          MR. JANSEN:  That's correct.

8          THE COURT:  -- and not retained for the purpose of

9  the appeal.

10         MR. JANSEN:  That is absolutely correct, Your Honor.

11         THE COURT:  And your fee arrangement is for a fee

12 that is reasonable for trial services only and doesn't include

13 any amount for an appeal.

14         MR. JANSEN:  That is absolutely correct.

15         THE COURT:  So, Mr. Jones, if you wish to appeal, and

16 you wish to have a lawyer appointed, I'll appoint a lawyer for

17 you for that purpose.

18         If that happens, it means essentially you are going

19 to have two lawyers -- one for appeal, and Mr. Jansen who is

20 obligated to you at the trial level.

21         Mr. Jansen, I take it you have been paid to finish up

22 with the substantial assistance; you've been paid --

23         MR. JANSEN:  Yes, Your Honor.

24         THE COURT:  So you've got a lawyer at the trial

25 level.

```
 1            I guess I need to ask you one other question as part
 2      of my due diligence before I appoint a lawyer.
 3            The source of funds that was used to hire you at the
 4      trial level, is that source of funds available to Mr. Jones to
 5      pay somebody for an appeal?
 6            MR. JANSEN:  I don't believe so, Judge.  It was kind
 7      of a payment plan, Judge.  It wasn't like -- and I have spoken
 8      to that person, and it took a while to get --
 9            THE COURT:  It wasn't -- Mr. Jones didn't have a pot
10      of money that he paid you out of.
11            MR. JANSEN:  Absolutely not.  He's been in custody.
12            THE COURT:  All right.  The source of funds, which
13      typically happens, he has family or somebody else to pay
14      money; and; of course, they are not obligated to fund an
15      appeal.  All right.
16            If you want a lawyer for an appeal, I'll appoint one.
17      You can consult with Mr. Jansen.  I'm sure he will give you an
18      opinion about any issues for purposes of an appeal; and, if
19      you want a lawyer to evaluate that, I'll appoint a lawyer, and
20      the lawyer can evaluate that.  What you ought to do is --
21            MR. JANSEN:  May I?
22            THE COURT:  Give me just a minute.  What you ought to
23      do is consider all of this, consult with the lawyers, and then
24      make a good, informed decision about the best way to proceed.
25            You can consult.
```

1      (*Mr. Jansen confers with the defendant.*)

2           So where I'm going to leave it is this.  You evaluate

3      whether you wish to appeal.  If you would like to have a

4      lawyer appointed for purposes of the appeal, file the

5      financial affidavit, which is the motion application for a

6      lawyer.  Those are available with the clerk of court.  So you

7      probably ought to have one of those available.  File that

8      motion.  I'll appoint a lawyer for purposes of the appeal.

9           Mr. Jansen, you're still in the case at the trial

10     level, and all I'm going to do is enter the judgment on the

11     sentence I just announced, until somebody brings something

12     back to me.  Unless I get something else, that's all I'm going

13     to do.

14          MR. JANSEN:  Judge, can you appoint him a lawyer

15     today?

16          THE COURT:  Is that what he wants, to appoint a

17     lawyer today?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right.  What I need to do is get him

20     to sign the application, which is signed under penalty of

21     perjury, about his assets.  I hope we have one in the

22     courtroom.  If he can do one right now before he gets away, if

23     you will get that done, I'll appoint him a lawyer for purposes

24     of the appeal.

25          And then, as I said, Mr. Jones, consult with that

1    lawyer and decide whether you wish to pursue the appeal and

2    evaluate the grounds and so forth, but then you will have a

3    lawyer, which is what you need to make that decision -- is you

4    need good advice from a good lawyer.

5            MR. JANSEN:  If I can find out who the lawyer will

6    be, I will consult with the lawyer.

7            THE COURT:  It will be whoever is next on the list

8    who handles appeals.

9            What else, if anything, can we do in this case today?

10           MR. COODY:  Nothing from the government.

11           MR. JANSEN:  Nothing, Your Honor.

12           THE COURT:  Thank you all.  We'll be in recess.

13       (*The proceedings concluded at 9:42 a.m.*)

14                    *  *  *  *  *  *  *  *

15

16

17

18   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.  Any
19   redaction of personal data identifiers pursuant to the
     Judicial Conference Policy on Privacy are noted within the
20   transcript.

21

22

23   *Judy A. Gagnon*                          4/14/2014
     Judy A. Gagnon, RMR, FCRR                 Date
24   Official U.S. Court Reporter

25